**KILMER VILLAGE CORPORATION, Kilmer Village Project 2 Corporation, Kilmer Village Project 3 Corporation,**

v.

**The UNITED STATES.**

No. 479-52.

United States Court of Claims.

July 12, 1957.

Monroe Goldwater, New York City, for plaintiffs. James L. Goldwater, Robert Conrad, and Goldwater & Flynn, New York City, were on the briefs.

John F. Wolf, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

This is an action brought by plaintiffs to recover damages for the alleged breach of a contract.

Plaintiffs were selected, under a procedure established by the Department of the Army, to negotiate a lease with the Secretary of the Army, for a portion of the reservation at Camp Kilmer, New Jersey. The negotiations on behalf of plaintiffs were conducted by a Mr. Powell, who will at times hereinafter be referred to as plaintiff. The facts are sufficiently set forth later in the opinion.

Plaintiffs urge that the defendant's selection of plaintiffs as the prospective lessees created a contract between the parties, and in the alternative that if no specific contract was entered into, there was an implied contract between the parties and that the refusal of the Secretary of the Army to go forward constituted a breach thereof.

In this posture the question to be answered is whether or not there was an express or implied contract entered into between the parties.

In 1948 there was an acute housing shortage at not only this but at many military establishments in the United States. In September of 1948 the Adjutant General, on behalf of the Secretary of the Army, addressed a letter to the commanding generals of all armies in which the problem of lack of housing was discussed. It was pointed out in that connection that:

"* * * Under the provisions of Public Law 364, 80th Congress, 5 U.S.C.A. § 626s-3 et seq., however, the outleasing, on a firm basis, for a long term, of a portion of a reservation is permissible when such action has been determined by the Secretary of the Army to be necessary for National Defense or in the public interest. The policy of the Department of the Army is to go as far as it can legally, and in good faith, in using this provision as an inducement in cases where it is

feasible to locate the proposed developments on military reservations."

Pursuant to the policy above outlined, the defendant established a procedure to be followed, in which it provided that the applicant would submit its proposal to the commander of the military installation where the housing was to be built. The proposal was to be reviewed and sent to the Army commander of that district. After that, the commander should select the prospective lessee and a lease should be negotiated by the division engineer and the selected applicant. The procedure further established that informal FHA concurrence in the lease should be obtained and draft of the lease sent to higher authority for approval and execution.

On January 27, 1949, plaintiff's principals submitted to defendant their written proposal to design, construct, finance, operate, and manage the housing project at Camp Kilmer, New Jersey, to be known as Kilmer Village. The proposal letter enclosing preliminary drawings stated:

"We respectfully submit for your consideration two sets of preliminary drawings and proposals covering garden apartment development to be known as "Kilmer Village" on the East side of Plainfield Avenue, opposite Camp Kilmer, in Piscataway Township, Middlesex County, New Jersey.

"This submission follows my several previous conferences with Colonel Davies and Major Townsley at the site in connection with need for additional housing facilities for your officers, noncommissioned officers, enlisted and civilian personnel at Camp Kilmer, plus the tremendous demand for dwellings by the general public in that area. It is my understanding that both the Department of the Army and the Federal Housing Administration have approved in principle the proposal of long-term leases of such surplus sites to private industry for the construction of garden apartments or single family homes for rental or purchase.

"As a present Colonel of Engineers in the Reserve and former Chief of Real Estate Management and Disposal in the North Atlantic Division Engineers, and with considerable national experience in real estate, housing and mortgage matters, I am thoroughly familiar with the general situation, requirements and procedure. As a former real estate and mortgage official for several of the largest life insurance companies, and present housing consultant to industry in the Raritan Valley area, and with over thirty-five years' experience in the construction fields, I am submitting this preliminary proposal for myself and associates. Mr. Convery, one of my associates, has been a practicing architect for over thirty years, is a past official of the FHA, and is generally considered well qualified in housing planning and development.

"We proposed to plan, construct and manage—'Kilmer Village'—and will pursue this matter most diligently, looking toward approval from all sources in order that construction may be started as soon as possible so that apartments may be available for renting and occupancy as early as possible. This is a preliminary submission. We propose to submit further details and complete data, including layouts, floor elevations, rental schedules and operating costs as soon as possible."

There followed correspondence between the assistant chief of engineers and the division engineer on the subject. A "specimen lease" was drawn which plainly stated that the lease was to be made between the Secretary of the Army, representing the United States, and the successful lessee. There followed additional correspondence between plaintiffs and defendant, which is set forth in detail in the findings of fact adopted by the court, and on April 1, 1949, Lt. Col. Fischer, for the district

engineer, wrote the following letter to plaintiffs:

"Reference is made to proposal submitted by you for the development of a garden apartment project to be erected on Government-owned land to be leased to you for that purpose at Camp Kilmer, N. J.

"As indicated in conference you attended at this office on 4 March 1949, you have been selected by the Department of the Army and your proposal approved in principle for the purpose of providing privately owned family housing for Army use at Camp Kilmer, N. J. As indicated in telephone conversations between yourself and Mr. D. S. Tooley of this office, representatives of this office are prepared to continue negotiations for a lease of the land necessary for the above mentioned project.

"In the meantime there is inclosed herewith for your information and study a revised draft of the proposed lease. Your comments on the inclosed draft of lease are requested together with advice from you as to when it will be convenient to resume negotiations."

All the statements contained in the proposal letter and the ensuing conversations and correspondence, including the letter from Lt. Col. Fischer quoted above, were merely preliminary negotiations as to what plaintiff's associates would do at Camp Kilmer, providing a lease for the land could be negotiated with the Secretary of the Army, and provided mortgage insurance could be obtained from FHA. This was all known and understood by Powell, who was well acquainted with Army real estate management and disposal proceedings as is evidenced by the letter of January 5, 1949, heretofore quoted. Nor was there any intention expressed by the Army in any of its correspondence that it considered the proposal of plaintiffs as having been accepted. In fact, on March 4, 1949, in a meeting between Mr. Powell and Lt. Col. Fischer in the New York

district engineer's office, the meaning of the selection of plaintiff as "sponsor" was explained as meaning only that the district engineer would negotiate for a lease only with Powell associates, not with any other applicant, and that when the lease had been negotiated in a form satisfactory to the district engineer's office, it would be forwarded through channels with the recommendation for ultimate execution by the Secretary of the Army. Thus, it was not only the intention of the Army to convey the information but so understood by plaintiff that only the Secretary of the Army had authority to contract. Certainly under these circumstances there was no firm offer by plaintiffs and no acceptance by defendant.

Furthermore, plaintiff was aware at the time that only the Secretary of the Army could enter into a lease and that was the limit of his authority. In other words, the Secretary at that time had no authority to contract directly for the construction of family housing. The representatives of defendant could only negotiate a lease which was subject to the approval of the Secretary of the Army.

No lease was ever signed by the Secretary of the Army. As a matter of fact, there came a time when the Secretary refused to approve the lease for the reason that Camp Kilmer was scheduled for deactivation. It was pointed out at the time of refusal to approve that:

"1. As Camp Kilmer, New Jersey, is scheduled to be placed in an inactive status during this Fiscal Year, it is pointed out that military personnel would be required under the lease to supply utilities, sewage disposal, police protection and other incidental proprietory duties after such inactivation unless other arrangements are made or the lease amended.

"2. Prior housing agreements of this type were basically and fundamentally authorized because of the urgency for military housing at the posts involved and, further, were

authorized at military establishments which were reasonably forecast as being permanent. In the instant case, it would appear that at such time as the housing would be completed it would be primarily, if not totally, a civilian housing project with the military interests being only for an indefinite future, that is, if and when emergency conditions arose which would necessitate the reactivation of this post.

"3. In view of the above, it is considered inappropriate at this time to execute the Camp Kilmer, New Jersey, military housing agreements and, therefore, they are returned without action."

Under these circumstances there would be no breach of the contract by the failure of the Secretary of the Army to sign the lease. No formal contract was ever consummated which could have been breached.

█ The question then remaining is whether or not the various negotiations and proposals constituted an implied contract.

All the evidence in the case points to the fact that the negotiations were preliminary and primarily for the purpose of entering into a lease for building sites in the Government-owned Camp Kilmer. Nothing could or would be done until the lease was agreed upon and signed by the parties. This was known to plaintiffs and certainly was the intention of the defendant. The intention of the defendant is further evidenced by its willingness to further negotiate a lease even after deactivation of the camp. This offer was made in good faith by the defendant in view of the time and money spent by plaintiffs. However, plaintiffs refused to further negotiate. Thus we think it clear that no contract can be implied from the circumstances surrounding the transaction. It is probably the rule rather than the exception that money is spent and not recovered in circumstances where a contract is not consummated. The fact that plaintiffs lost money is not enough.

The Kilmer Village project was largely the product of the imagination of plaintiffs. Plaintiffs not only developed the idea, but drew the plans and progressed to the point that only plaintiffs were to be recognized in negotiations for a lease. It is also true that had Camp Kilmer not been deactivated by the Army, plaintiffs would undoubtedly have been awarded the contract. Almost all their proposals had been agreed upon and accepted by the Army. However, in the absence of final acceptance by the Secretary of the Army, we do not feel that the efforts and negotiations by plaintiffs ripened into a contract.

There being no contract, either express or implied between the parties, this court cannot grant recovery under the Tucker Act, 28 U.S.C. § 1491. Cf. United States v. Minnesota Mutual Investment Company, 271 U.S. 212, 217, 46 S.Ct. 501, 70 L.Ed. 911; Goodyear Tire & Rubber Company v. United States, 276 U.S. 287, 293, 48 S.Ct. 306, 72 L.Ed. 575.

Plaintiffs' petition is dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER, and LITTLETON, Judges, concur.